IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

TERRY COOPER,              )
                         )
    Plaintiff,           )
                         )
v.                     )          No. 1:20-CV-01265-STA-jay
                         )
ASSA ABLOY DOOR GROUP d/b/a   )
CECO DOORS,          )
                         )
    Defendant.         )

REPORT AND RECOMMENDATION ON DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendant Assa Abloy Door Group d/b/a Ceco Doors' ("Defendant")

Motion for Summary Judgment and accompanying memorandum. (Docket Entry "D.E." 23 & 23-

1.) Plaintiff Terry Cooper ("Plaintiff") initiated this action by filing a *pro se* Complaint on

November 30, 2020. (D.E. 1.) Because this action was initially filed by a *pro se* Plaintiff, all

pretrial matters have been referred to the undersigned Magistrate Judge for determination and/or

report and recommendation. (Admin. Order 2013-05.) Plaintiff has not responded to Defendant's

motion. For the reasons set forth below, the undersigned **RECOMMENDS** Defendant's motion

be **GRANTED**.

I.        PROPOSED UNDISPUTED FINGINGS OF FACT

Plaintiff did not file any response to Defendants' Statement of Undisputed Material Facts.

Local Rule 56.1(b) requires such a response, and Local Rule 56.1(d) provides that failure to do so

"within the time periods provided by these rules shall indicate that the asserted facts are not

disputed for purposes of summary judgment." Accordingly, it is **RECOMMENDED** that

Defendant's Statement of Material Fact be deemed as undisputed for purposes of summary judgment. The undisputed findings of fact are set forth below:

Plaintiff is employed by Ceco as a Manufacturing Technician in Milan, Tennessee. (D.E. 23-2.) Ceco is a manufacturer of commercial steel doors and frames. (*Id.*) Ceco has several production lines in its facility which are known as the Rollform, Custom Frames, and Dip Paint lines. (*Id.*) Each line has a Lead, who directs the work of the other employees on the line. (*Id.*) When Plaintiff first began working for Ceco, and for much of his career, he worked on the Dip Paint line. (*Id.*)

At some point prior to 2018, Plaintiff requested a move from Dip Paint to the Rollform line. (*Id.*) Ceco granted that request, and Plaintiff ultimately began working under Lead Brian Walters. (*Id.*) In January 2018, a co-worker named Carla Butler reported to Ceco that Plaintiff has been staring at her while they were working together and licking his lips suggestively while doing so. (*Id.*) Ceco's onsite HR manager, Kristy Mercer, conducted an investigation into the allegation and interviewed Butler, Plaintiff, and another female co-worker known as "Kizzie" who corroborated Butler's allegations. (*Id.*) Plaintiff claims during the investigation that he had done nothing wrong and, in fact, the female co-workers were the ones who were staring at him, not the other way around. (*Id.*) Ultimately, Mercer concluded that no discipline was appropriate, but advised Plaintiff to be aware of where he was staring to avoid making other employees uncomfortable. (*Id.*)

On May 31, 2018, Lead Brain Walters approached Plaintiff while on the Rollform line to discuss the manner in which Plaintiff was moving parts through the line. (*Id.*) Plaintiff became upset about the conversation and pushed some frames on the line, causing one to fall to the ground. (*Id.*) Walters approached Plaintiff again to discuss what he had done, and Plaintiff accused him of

harassing him.  (*Id.*)  Plaintiff admits raising his voice to Walters during this altercation and admits that he stepped within inches of Walters while yelling at him.  (*Id.*)  According to Walters, he told Plaintiff to back up, and Plaintiff replied, "what are you gonna [sic] do mother----er?"  (*Id.*)  Plaintiff was issued a written Performance Counseling Notice for insubordination on June 5, 2018, for that incident.  (*Id.*)

At the same time, another employee who worked on the Custom Frames line, Donna Yarbrough, had expressed that she was having difficulties with the Lead on that line, Andrew Lett. (*Id.*)  Because Plaintiff had an altercation with lead Brian Walters at the same time that Yarbrough was having issues with lead Andrew Lett, Ceco decided to swap the two employees in hopes that this would resolve both issues.  (*Id.*)  Both employees held the same position, worked the same shift, and made the same wages, so the swap was not a detriment to either employee.  (*Id.*)  Plaintiff, therefore, moved to the Custom Frames line on June 11, 2018, under Lead Andrew Lett, with no change in pay, position, or shift.  (*Id.*)  Plaintiff testified in his deposition that he has no reason to believe Lead Brian Walters treated him differently because of his race or gender.  (*Id.*)  While on the Custom Frames line, Plaintiff received training from co-worker Sarah Sutton.  (*Id.*)  In August 2018, Sutton reported to Lett that after six weeks of training, Plaintiff was not performing well and seemed to have issues remembering where certain parts were supposed to go.  (*Id.*)  Lett reported Plaintiff's struggles with performance to his supervisors, Production Manager Stephen Watson and Manufacturing Manager Daniel Sandor, in emails in August 2018, October 2018, and December 2018.  (*Id.*)

In January 2019, a position opened up on the Dip Paint line, where Plaintiff had previously worked with success.  (*Id.*)  Because he was still having issues performing satisfactorily on the Custom Frames line, and because he already had proven the ability to perform well on the Dip

Paint line, Ceco decided to move him back to the Dip Paint line where he would hopefully be more successful. (*Id.*) Notably, even while assigned to other production lines, Plaintiff had continued to work overtime shifts in the Dip Paint line. (*Id.*) The transition was to a line where he had worked for much of his career was one which Ceco felt had a high chance of success. (*Id.*) Plaintiff was, therefore, moved to the Dip Paint line as of January 25, 2019. (*Id.*) Plaintiff's position, wages, and shift did not change with this move, and he has had no concerns regarding his employment since that move occurred. (*Id.*) Plaintiff testified in his deposition that he did not have any reason to believe that Lead Andrew Lett took any actions regarding his position based on his race or gender. (*Id.*)

On August 6, 2019, Plaintiff filed a Change of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging violations of Title VII of the Civil Rights Act of 1964 based on his race and gender. (*Id.*) On November 30, 2020, Plaintiff filed his Complaint making the same allegations of race and gender discrimination. (*Id.*) Although he is currently a *pro se* litigant, Plaintiff was represented by attorney Myra Hamilton throughout the EEOC process and at the time he filed his Complaint. (*Id.*) According to Plaintiff, Ms. Hamilton also assisted with the preparation of his Complaint and typed up the factual allegations listed in paragraph 10 of the Complaint. (*Id.*)

In his Complaint, Plaintiff claims generally that he was "treated unfairly" by his Lead, by Manufacturing manager Daniel Sandor, and by his coworkers. (*Id.*) In his deposition, Plaintiff clarified that he was referring to his receipt of a June 2018, write-up and the fact that he felt Sandor and his supervisors were "listening to all of those females" when they were "telling lies on [him]" by complaining about his behavior in a January 2018 complaint to Human Resources. (*Id.*) Plaintiff goes on to additionally allege that he was subjected to a hostile work environment by his

female co-workers simply because they complained about him in January 2018. (*Id.*) At no point did Plaintiff make a complaint of harassment or unfair treatment based on his race or gender to Human Resources or anyone else. (*Id.*) At no point did any of the Leads to whom Plaintiff reported made any comments he believed were inappropriate. (*Id.*)

## II.    PROPOSED CONCLUSIONS OF LAW

### STANDARD OF REVIEW

Under Fed. R. Civ. P. 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party "has the initial burden of showing the absence of a genuine dispute as to a material fact." *Automated Solutions Corp. v. Paragon Data Sys., Inc.*, 756 F.3d 504, 520 (6th Cir. 2014) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "A dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Smith v. Perkins Bd. of Educ.*, 708 F.3d 821, 825 (6th Cir. 2013) (quoting *Ford v. Gen. Motors Corp.*, 305 F.3d 545, 551 (6th Cir. 2002)). Conversely, "[t]here is no genuine issue for trial where the record 'taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Burgess v. Fischer*, 735 F.3d 462, 471 (6th Cir. 2013) (quoting *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). A court's function at the summary judgment stage is not to "weigh the evidence and determine the truth of the matter;" rather, it is "to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *see also Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741, 748 (6th Cir. 2012) (quoting *Anderson*, 477 U.S. at 255) ("Credibility determinations . . . and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.").

If the motion is properly supported, "the opposing party must go beyond the contents of its pleadings to set forth specific facts that indicate the existence of an issue to be litigated." *Slusher v. Carson*, 540 F.3d 449, 453 (6th Cir. 2008) (citation omitted). Thus, "in order to defeat summary judgment, the party opposing the motion must present affirmative evidence to support [his] position; a mere 'scintilla of evidence' is insufficient." *Jones v. City of Franklin*, 677 F. App'x 279, 282 (6th Cir. 2017) (quoting *Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003)). Although a court does not weigh the evidence at this stage, it "must view all evidence and draw any reasonable inferences therefrom in favor of the nonmoving party." *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 426 (6th Cir. 2014) (citing *Matsushita*, 475 U.S. at 587). "[C]onclusory allegations, speculation, and unsubstantiated assertions," however, "are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment." *Jones*, 677 F. App'x at 282 (citing *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

"*Pro se* complaints are to be held to 'less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) ("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading." (internal quotation marks omitted)); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011)

6

("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants.  Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party.  While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

## ANALYSIS

Plaintiff has failed to respond to Defendant's motion.  The United States Court of Appeals for the Sixth Circuit has consistently held that "a district court abuses its discretion when it grants summary judgment solely because the non-moving party has failed to respond to the motion within the applicable time limit." *Miller v. Shore Fin. Servs., Inc.*, 141 F. App'x 417, 419 (6th Cir. 2005) (citing *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998); *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991)).  Therefore, "summary judgment cannot be granted by default even if there is a complete failure to respond to the motion."  Fed. R. Civ. P. 56 advisory committee's note (2010 Amendments, subdivision (e)); accord LR 7.2(a)(2) ("Failure to respond timely to any motion, other than one requesting dismissal of a claim or action, may be deemed good grounds for granting the motion." (emphasis added)).

However, "[a] district court may properly grant summary judgment, when the opposing party has not responded to the motion, if the motion demonstrates that the moving party is entitled to judgment as a matter of law." *Turner v. Gen. Motors Corp.*, 23 F. App'x 415, 416-17 (6th Cir. 2001) (emphasis added) (citing *Stough*, 138 F.3d at 614).  "The fact that the non-moving party fails to respond to the motion does not lessen the burden on either the moving party or the Court to demonstrate that summary judgment is appropriate." *White v. Duke Energy Ky., Inc.*, 2014 WL 656639, at *3 (S.D. Ohio 2014) (citing *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 410 (6th

Cir. 1992); *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991)). "The failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (alteration omitted) (internal quotation marks omitted) (quoting *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009)); accord *Martinson v. Regents of Univ. of Mich.*, 2014 WL 1344476, at *6 (6th Cir. 2014).

Therefore, courts "must review carefully those portions of the submitted evidence designated by the moving party." *Kovacic v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 809 F. Supp. 2d 754, 793 (N.D. Ohio 2011) (quoting *Guarino*, 980 F.2d at 410), aff'd and remanded, 724 F.3d 687 (6th Cir. 2013) (internal quotation marks omitted). Accordingly, when a motion for summary judgment is unopposed, a court "may grant summary judgment only if after a close examination of the Motion and the documents in support, the court determines that no genuine issue of material fact remains." *Papatheodorou v. Clark*, 781 F. Supp. 2d 582, 586 (N.D. Ohio 2011) (citing *Stough*, 138 F.3d at 614; *Turner v. GMC*, 23 F. App'x. 415, 417 (6th Cir. 2001)).

A.      *Claims Prior to October 10, 2018*

Defendant first argues that, to the extent that Plaintiff complains about any actions occurring prior to October 10, 2018, his claims are time-barred because they took place outside the 300-day limitations period for administrative exhaustion through his Charge of Discrimination filed with the EEOC. (D.E. 23.) The undersigned finds this argument as well-taken. Title VII requires that a plaintiff exhaust her administrative remedies prior to bringing suit in federal court by filing a Charge of Discrimination with the EEOC within 300 days of the alleged unlawful employment practice. 42 U.S.C. § 2000e–5(e)(1); *see also Randolph v. Ohio Dep't of Youth Servs.,* 453 F.3d 724, 731 (6th Cir. 2006). Any allegations of adverse employment action prior to October 10, 2018, is outside the 300-day limitations period for inclusion in Plaintiff's EEOC Charge of

Discrimination and is not actionable. (D.E. 23-2, PageID 88.) Furthermore, with the exception of Plaintiff's transfer from Custom Frames to the Dip Paint line, all of the events Plaintiff complains of occurred prior to October 10, 2018. Therefore, the undersigned **RECOMMENDS** that all claims made about events or actions occurring prior to October 10, 2018, and all claims except ones involving Plaintiff's transfer from Custom Frames to the Dip Paint line be dismissed as they are time-barred and not actionable.

B.      *Failure to State a Prima Facie Case of Title VII Discrimination*

Defendants argue that Plaintiff is unable to make a *prima facie* case of Title VII discrimination based on race and gender because, most notably and among other arguments, he is unable to demonstrate that he suffered an adverse employment action, an element of a discrimination claim. (D.E. 23-1, PageID 77.) The undersigned finds this argument as well-taken.

Title VII provides that it shall be unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may establish a claim of discrimination either by introducing direct evidence of discrimination or by presenting circumstantial evidence that would support an inference of discrimination. *Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997). Whereas here the claim is based on circumstantial evidence, courts employ the burden-shifting framework set forth in *McDonnell Douglas*. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). Under *McDonnell Douglas*, a plaintiff first carries the burden of establishing a *prima facie* case. 411 U.S. at 802. To establish a *prima facie* case of discrimination under Title VII, a Plaintiff must show that 1) he is a member of a protected class; 2) he was qualified for the job and performed it satisfactorily; 3) despite his qualifications and performance, he suffered an

adverse employment action; and 4) he was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside of his protected class. *See Logan v. Denny's*, 259 F.3d 558, 567 (6th Cir. 2001); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992). If the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to provide a legitimate non-retaliatory reason for its actions. *Morris v. Oldham Cty. Fiscal Court*, 201 F.3d 784, 792-793 (6th Cir. 2000) (applying non-retaliatory framework to a Title VII retaliation claim). If the defendant produces that evidence, the plaintiff must prove that the legitimate non-retaliatory reason was pretextual. *Chen v. Dow Chem. Co.*, 580 F.3d 394, 402 (6th Cir. 2009) (applying pretext to a Title VII retaliation claim). In the context of a Title VII discrimination claim, an adverse employment action is defined as a "materially adverse change in the terms and conditions" of employment. *Kocsis v. Multi-Care Mgmt. Inc.*, 97 F.3d 876, 885 (6th Cir. 1996). An adverse employment action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus. Inc. v. Ellerth*, 524 U.S. 724, 761 (1998).

Here, Plaintiff has not alleged or provided proof of any action by his co-workers, Leads, or Ceco Managers that he suffered a loss of income or any other term of employment which would rise to the level of adverse employment action. Moreover, his transfers do not constitute adverse employment action because he retained the same position, compensation, and shift as he was performing the same duties and responsibilities on different production lines. Finally, he did not suffer any loss of benefits, duties, or have any changes in his terms and conditions of his employment. Therefore, because Plaintiff has not met the element of suffering an adverse

employment action, the undersigned **RECOMMENDS** that all of Plaintiff's Title VII Discrimination claims be dismissed.

C.        *Failure to State a Prima Facie Case of Title VII Hostile Work Environment*

Defendants next assert that while Plaintiff can establish the first element that he is a member of a protected class, he is unable to establish any of the other four necessary elements to state a *prima facie* case of Title VII Hostile Work Environment.  (D.E. 23-1, Page 81.)  The undersigned also finds this argument as well-taken.

To establish a prima facie case of race or sex discrimination based upon a hostile work environment, an employee must show 1) he is a member of a protected class; 2) he was subjected to unwelcome racial or sexual harassment; 3) the harassment was race-based or sex-based; 4) the harassment unreasonably interfered with his work performance by creating an environment that was intimidating, hostile, or offensive; and 5) the employer knew or should have known about the harassing conduct but failed to take corrective action.  *See Lindsey v. Whirlpool Corp.*, 295 F. App'x 758, 765 (6th Cir. 2008).

Plaintiff's claim is based solely on the January 2018 complaint by Carla Butler and "those females" while he was working on the Rollform line.  (D.E. 23-1, PageID 80-81.)  As stated previously, because this claim involves events prior to October 10, 2019, the undersigned **RECOMMENDS** that it be dismissed.  Even so, a hostile work environment occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citation omitted).  Both an objective and subjective test must be met; in other words, the conduct must be so severe or pervasive as to constitute a hostile or abusive working

11

environment both to the reasonable person and the actual victim. *Id.* at 21-22. Title VII and similar laws protecting civil rights are not meant to set a general civility code for the workplace. *Ceckitti v. City of Columbus, Dept. of Pub. Safety, Div. of Police*, 14 F. App'x 512, 518 (6th Cir. 2001) ("Title VII was not meant to be, and Courts must ensure that it does not become a 'general civility code.'") (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, (1998)). "In other words, the conduct of jerks, bullies, and persecutors is simply not actionable under Title VII unless they are acting because of the victim's [protected status]." *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 467 (6th Cir. 2012). Thus, even if Plaintiff made a timely claim, he has not presented a claim which rises to the level of a hostile work environment under Title VII. The undersigned **RECOMMENDS**, accordingly, that Defendant is entitled to summary judgment as to all of Plaintiff's claims and that Plaintiff's claims be dismissed.

## III. RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that the Defendant's motion for summary judgment be **GRANTED.**

Respectfully submitted this 17th day of March 2022.

s/ Jon A. York
JON A. YORK
UNITED STATES MAGISTRATE JUDGE

## NOTICE

**Within fourteen (14) days after being served with a copy of this report and recommended disposition, a party may serve and file written objections to the proposed findings and recommendations. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Failure to file objections within fourteen (14) days may constitute a waiver of objections, exceptions, and further appeal.**